IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 09-cv-01436-LTB

CHANTELL L. ANDERSON,

 Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

 Defendant.

_____

ORDER
_____

  Plaintiff Chantell L. Anderson appeals Defendant's (the "Commissioner") final administrative decision denying her claim for supplemental security income under the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision.

## I. Statement of the Case

  Plaintiff applied for supplemental security income under the Act in September of 2006. Following the initial denial of benefits, a video hearing was held before an administrative law judge (the "ALJ") on February 27, 2008. On April 1, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. On April 17, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby rendering this decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II. Statement of Facts

### A. Background

Plaintiff was born in 1984 and was 24 years old at the time of the Commissioner's decision. Administrative Record ("AR") 18 & 52. Plaintiff is a high school graduate with no past relevant work experience. AR 18 & 82. Plaintiff initially alleged that she became disabled on October 29, 2002 as a result of chronic pancreatitis and chronic pain (AR 75) but changed her alleged disability onset date to September 27, 2006 prior to the hearing before the ALJ (AR 33).

Before September 27, 2006, Plaintiff was treated on multiple occasions for abdominal pain and other symptoms. AR 208, 209, 223, 238, 252, 287. After September 27, 2006, Plaintiff was treated on multiple occasions at St. Mary's Family Medicine Center ("St. Mary's") for abdominal pain and other complaints as discussed in further detail below.

On November 3, 2006, Jennifer Surber, M.D., noted that Plaintiff complained of continued chronic nausea and mid-epigastric pain; increasing anxiety and social concerns; and itching in her ears and throat. AR 202. Dr. Surber found Plaintiff to be "in no acute distress" with "difficulty maintaining focus on 1 particular complaint at a time" and "no specific [a]bdominal distress elicited during distraction while the plaintiff is talking." AR 203. Dr. Surber assessed Plaintiff with chronic mid-epigastric pain, nausea, anxiety, and depression and noted that Plaintiff had previous diagnoses of chronic pancreatitis "though laboratory studies do not typically bear this out acutely." AR 203.

On November 22, 2006, Dr. Surber saw Plaintiff for "[f]ollow up pain management." AR 199. At this time, Plaintiff complained that she was in "extreme pain" most of the time and rated her pain as a 5 on a scale form 1 to 10. *Id.* Dr. Surber noted that Plaintiff suffered chronic

pain with unclear etiology despite significant work-up and treatment and probable somatization and/or anxiety. AR 200.

On December 15, 2006, Plaintiff went to St. Mary's acute care clinic complaining of abdominal pain. AR 194. The treating physician assessed Plaintiff with acute exacerbation of chronic abdominal pain and noted that chronic pancreatitis could not be ruled out but did not seem likely at this time. AR 195. At a follow-up appointment on December 19, 2006, Dr. Surber assessed Plaintiff with mid-epigastric pain with a history of chronic pancreatitis but no active disease apparent. AR 193. At a further follow-up appointment on January 9, 2007, Dr. Surber noted that Plaintiff did not seem bothered by her palpation and manipulation of her abdomen and assessed Plaintiff with chronic pain/nausea with history of chronic pancreatitis, depression, and anxiety. AR 190-91.

On March 29, 2007, Dr. Surber saw Plaintiff for a general check-up and to address her complaints of chronic nausea, vomiting, and abdominal pain. AR 134. Dr. Surber assessed Plaintiff with "chronic nausea and vomiting subjectively with questionable overlying psychiatric factors, certainly anxiety and possible borderline personality disorder complicating the actual diagnosis and treatment of her problems," as well as bilateral ear pain and personality disorder. AR 135-36. Dr. Surber again saw Plaintiff on May 7, 2007 for "dysfunctional uterine bleeding." AR 131-33. Dr. Surber noted that Plaintiff would need a new primary care physician but was "going to present a challenge for most providers" and that Plaintiff was "very mainipulative in her medical care behaviors." *Id.*

On June 18, 2007, Plaintiff was seen for the first time by Shayna Murdcok, M.D. at St. Mary's. Dr. Murdock assessed Plaintiff with chronic pancreatitis though her pancreatic enzymes

3

had not been elevated for some time; obesity; pain with a goal of decreasing her use of pain medication; and allergy symptoms. AR 129. There are no medical records to show that Plaintiff was seen by Dr. Murdock on any other occasion though Plaintiff was seen by other physicians at St. Mary's after June 18, 2007 for complaints of back pain and panic attacks. AR 122, 123, 124-5 & 126-7. There is no indication in the treatment notes that Plaintiff complained of abdominal pain at these appointments with other physicians. *Id.*

In February of 2008, Dr. Murdock completed a physical assessment of Plaintiff's ability to do work-related activities. Dr. Murdock opined that Plaintiff could occasionally lift and/or carry up to 20 pounds; sit for 2-3 hours at a time and up to 3 hours in an 8-hour workday; stand for 1-2 hours at a time for up to 1 hour in an 8-hour workday; walk for 1-2 hours at a time for up to 2 hours in an 8-hour workday; continuously reach, handle, finger, feel and push/pull with both hands; frequently climb stairs but never climb ladders or scaffolds, stoop, crouch, kneel, or crawl; had no hearing or visual impairments; and could tolerate moderate office noise. AR 117-20. Dr. Murdock further opined that Plaintiff's physical impairments of chronic abdominal pain, chronic headaches, and severe depression would preclude her from working a full 8-hour workday four days a month. AR 121.

On February 27, 2007, Alberta Ziomeck, M.D., a non-examining State agency psychiatrist, completed a psychiatric review technique form for Plaintiff. AR 148-61. Dr. Ziomeck found that Plaintiff suffered from an affective disorder, an anxiety-related disorder, and substance addiction disorder but that these impairments were not severe. AR 148. Dr. Ziomeck further found that Plaintiff had no restriction in activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or

pace; no episodes of decompensation; and no mental limitations that would keep her from working. AR 158 & 160.

**B. Plaintiff's Disability Hearing**

At the February 27, 2008, hearing, Plaintiff testified that her pain sometimes kept her up until 4:00 a.m. and that she typically got up between 11:30 a.m. - 12:00 p.m. (AR 858); she could stand 4-5 minutes before her pain forced her to sit down (AR 859-60); she could sit sometimes only 5-10 minutes but never more than 30 minutes if she had an active day (AR 860-61); she lays down for 1-2 hours for up to 3-4 hours a day (AR 861); she worked on crafts for up to an hour a day (AR 861); she throws up at least once a day if she has eaten anything that day (AR 862); her activity was limited to primarily laying down watching TV at least three days a week (AR 862-3); she suffered from frequent headaches due to one of her pain medications (AR 866-7); and she could lift 10 pounds or so (AR 870).

Nora Dunne, a vocational expert, also testified at Plaintiff's September 27, 2008 hearing. The ALJ first asked Ms. Dunne if an individual with the same age and educational background as Plaintiff who was only able to stay on task for less than 30 minutes before needing a rest break could engage in competitive employment. AR 873. Ms. Dunne responded that these limitations were not compatible with competitive employment. *Id.* The ALJ then asked Ms. Dunne if an individual with the same age and educational background as Plaintiff who would need to miss all or part of 3-4 workdays per month could engage in competitive employment. *Id.* Ms. Dunne responded that these limitations would not allow for competitive employment. *Id.*

**C. The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §

416.920(a). At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 27, 2006. AR 14. At the second step, the ALJ determined that Plaintiff had medically determinable impairments of chronic pancreatitis, obesity, headaches, anxiety, affective disorder, and substance abuse but that only her impairments of pancreatitis and obesity were "severe." *Id.* At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 15.

At the fourth step of the sequential process, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). *Id.* In discussing Plaintiff's RFC, the ALJ concluded that Plaintiff's statements regarding her impairments were not credible to the extent that these statements were inconsistent with the assessed RFC and that the opinions of Dr. Murdock regarding Plaintiff's limitations were entitled to little weight. AR 16-7. After further concluding that Plaintiff had no past relevant work experience (AR 17), the ALJ proceeded to the fifth step of the sequential process and concluded that there were a significant number of jobs in the national economy that Plaintiff was capable of performing through use of the Medical-Vocational Guidelines. AR 18.

### III. Standard of Review

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98

6

(10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamilton, supra,* 961 F.2d at 1498. I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995). Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed. *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

## IV. Analysis

Plaintiff raises a number of issues on appeal: (1) whether the ALJ materially mis-stated or omitted medical evidence; (2) whether the ALJ erred in stating that the clinical evidence is consistent with drug seeking behavior by Plaintiff; (3) whether the ALJ's erred in his assessment of Plaintiff's credibility; (4) whether the ALJ failed to adequately develop the record; (5) whether the ALJ properly weighed the opinions of Dr. Murdock; and (6) whether the ALJ properly applied the Medical-Vocational Guidelines to find that Plaintiff was not disabled during the relevant time frame.

**A. The Medical Evidence Considered by the ALJ**

Plaintiff first asserts that the ALJ cited only one page from the record that is dated after her alleged disability onset date of September 27, 2006 to support his decision. This assertion is easily dismissed upon review of the ALJ's decision wherein he discussed and cited many of Plaintiff's 2007 medical records from St. Mary's. AR 16.

Plaintiff next attempts to argue that the ALJ mis-stated the medical findings from her May 7, 2007 and June 18, 2007 appointments at St. Mary's when he indicated that she was suffering from "mild epigastric pain" at this time. AR 16. In support of this argument, Plaintiff

cites one page of the treatment notes from Plaintiff's May 7, 2007 appointment where Dr. Surber assessed Plaintiff with "mid-epigastric pain and nausea." AR 132. The ALJ, however, was not quoting directly from the medical reports, and his reference to mild epigastric pain likely reflects his characterization of Plaintiff's symptoms in May and June of 2007. There is support for this characterization in the treatment notes cited by the ALJ. *See* AR 128 (on examination of Plaintiff's abdomen, Dr. Murdock noted mild epigastric tenderness) & 130 (Plaintiff's abdomen was "nontender" upon examination in connection with complaint of rectal bleeding). I therefore decline to find error in the ALJ's reference to Plaintiff's "mild epigastric pain."

Finally, Plaintiff takes issue with the ALJ's purported reliance on an endoscopy performed on Plaintiff more than 5 years before her alleged disability onset date. However, the ALJ merely cited this procedure as one of several medical records supporting his conclusion that "it is unclear, given the claimant's narcotic abuse, minimal pathology, and quiescent symptoms, why she has been prescribed continued narcotics." AR 15. Plaintiff's argument that the ALJ erred in not instead relying on an endoscopic ultrasound performed in July of 2006 contradicts her repeated assertions that medical records that pre-pate her alleged disability onset date are of little relevance. The report from the July 2006 procedure contains evidence to support the ALJ's conclusions in any event. *See* AR 172 (noting that Plaintiff suffers from "mild abdominal pain" and has "no acute distress").

For these reasons, I reject Plaintiff's argument that the ALJ erred in materially mis-stating or omitting medical evidence. I further conclude that there is substantial medical evidence to support the ALJ's factual findings regarding Plaintiff's medical history and status. In particular, although Plaintiff's medical records from St. Mary's make numerous reference to

8

Plaintiff's chronic abdominal pain, there is little evidence to support this condition beyond Plaintiff's subjective complaints.

**B. The ALJ's References to Plaintiff's "Drug Seeking Behavior"**

In his decision, the ALJ commented that the state agency had noted that Plaintiff's clinical evidence is consistent with drug seeking behavior. AR 16. The ALJ proceeded to find that Plaintiff exhibited drug seeking behavior. AR 17. The ALJ's decision also identified "substance abuse" as one of Plaintiff's impairments and stated that the record disclosed "[a] longitudinal history of ... substance abuse." AR 14 & 15. Plaintiff argues that in making these findings, the ALJ erroneously relied on the findings of the state agency, which was in fact represented by a "single decision maker" or lay person, "in order to impeach and prejudice the Plaintiff's claim." I disagree.

As noted by Defendant, there are numerous references in Plaintiff's medical records to concerns over her dependency on pain medications to manage her complaints of pain of undetermined etiology despite significant testing and treatment. *See e.g.* AR 128, 129, 132 & 135. It is these records, which are largely consistent with the opinions of the single decision maker, that formed the primary basis for the ALJ's ultimate decision that Plaintiff is not disabled within the meaning of the Act. I therefore do not find any error in the ALJ's reference to the opinions of the single decision maker. Moreover, references to and reliance on the opinions of the single decision maker would constitute no more than harmless error in light of the other evidence in the record.

**C. The ALJ's Assessment of Plaintiff's Credibility**

Credibility determinations are the province of the ALJ and will be upheld provided that

they are supported by substantial evidence. *Diaz v. Sec. of Health & Human Serv.,* 898 F.2d 774, 777 (10th Cir. 1991). Plaintiff challenges the ALJ's determination that she was not credible on the basis that this conclusion was based on the opinions of the single decision maker. In fact, the ALJ's determination that Plaintiff was not credible to the extent that her testimony was inconsistent with the RFC he, not the single decision maker, assessed for her was based on a number of factors including analysis of her medical records and his personal observations at the hearing. To the extent that the ALJ erroneously based his assessment of Plaintiff's credibility on the single decision maker's comment that Plaintiff was "drug seeking," the error was harmless in light of the other evidence in the record that conflicts with Plaintiff's statements concerning the nature, severity, intensity, persistence, and limiting effects of her impairments.

**D. Development of the Record**

Plaintiff argues that the ALJ erred in failing to make further inquiry of Plaintiff's physicians or other acceptable sources to resolve his question of why Plaintiff continued to be prescribed narcotics for her abdominal pain. AR 15. The ALJ was only required to obtain additional information from Plaintiff's treating physicians, however, if the information from those sources was inadequate for him to determine whether Plaintiff was disabled. 20 C.F.R. § 404.1512(e). There is nothing in the ALJ's decision to suggest that his questioning of why Plaintiff continued to be prescribed narcotics for her complaints of abdominal pain precluded a determination that neither this pain nor Plaintiff's other impairments rendered her disabled within the meaning of the Act. Accordingly, the ALJ did not err in failing to make further inquiry in this regard.

### E. The ALJ's Treatment of the Opinions of Dr. Murdock

Generally, an ALJ gives more weight to the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527(d)(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence," it is given controlling weight. *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and other enumerated factors must be applied to determine the appropriate weight to give the opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003) (*quoting* Soc. Sec. R. 9602p, 1996 WL 374188 at *4). These factors include length of the treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability; consistency; and specialization. 20 C.F.R. § 404.1527(d)(2) - (6).

Here, the only evidence in the record regarding Dr. Murdock's treatment of Plaintiff are notes from a single appointment in June of 2007, or nearly 8 months before Dr. Murdock completed her assessment of Plaintiff's physical ability to do work-related activities. Moreover, Dr. Murdock's treatment notes from this single appointment make no mention of the headaches, emotional liability, or depression that she cited in addition to Plaintiff's chronic abdominal pain as support for the physical limitations she assessed for Plaintiff. AR 117-20 & 128-9. Under these circumstances, the ALJ did not err in giving little weight to Dr. Murdock's opinions regarding Plaintiff's physical limitations.

### F. The ALJ's Use of the Medical-Vocational Guidelines

Plaintiff objects to the ALJ's determination that "[b]ased on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work

experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.20."
Plaintiff's argument in support of this objection, however, primarily focuses on the ALJ's
purported reliance on the opinions of the single decision maker in determining that Plaintiff had
the RFC to perform the full range of light work. Plaintiff acknowledges, however, that the single
decision maker actually opined that Plaintiff was capable of performing more than light work.
Furthermore, The ALJ was not obligated to accept the RFC assessment of Dr. Murdock for the
reasons previously set forth. *See also Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004)
("the ALJ, not a physician, is charged with determining a claimant's residual functional capacity
from the medical record"). The ALJ's RFC assessment for Plaintiff is supported by substantial
evidence in the record and does not constitute reversible error.

Plaintiff's only other objection to the ALJ's use of the Medical-Vocational Guidelines is
her general assertion that the ALJ erroneously applied Rule 202.20 because Plaintiff's
characteristics did not precisely match the criteria of this rule. Clearly, the Guidelines are only
to be applied when they accurately describe a claimant's abilities and limitations. *See Heckler v.
Campbell,* 461 U.S. 458, 462 n. 5 (1983). However, Plaintiff has failed to specifically identify
any distinguishing characteristics that would render the Guidelines inapplicable to her case. To
the extent Plaintiff is arguing that the ALJ's use of the Guidelines was inappropriate because she
suffers from nonexertional pain, the ALJ found that Plaintiff's complaints of pain were not
credible to the extent that they were inconsistent with her ability to do the full range of light
work. Accordingly, I find no reversible error in the ALJ's use of the Medical-Vocational
Guidelines.

## V. Conclusion

Because the ALJ's findings are supported by substantial evidence in the record and based on the correct legal standards, IT IS ORDERED that the Commissioner's decision is AFFIRMED .


Dated: April __16__, 2010 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE